THE ROCK ISLAND LUMBER & MANUFACTURING COM-
PANY v. THE EQUITABLE TRUST & INVESTMENT
COMPANY, as *Garnishee, et al.*

1. GARNISHMENT— *Property Subject to Specific Fund.* Where a mort-gage loan is made with which to erect a building upon land, and there is a concurrent agreement between the parties that the fund derived from the loan shall be set aside and used for that specific purpose, a portion of which is to be paid out as the work progresses, and the remainder after its satisfactory completion, and there is also an assignment of the fund by the borrower to a third person who is to superintend the construction of the building and the proper ap-plication of the fund, no part of such fund is subject to garnishment for the ordinary debts of the borrower created for other purposes until the building is completed, and then only so much of it as re-mains after carrying out the agreements of the parties under which the loan is made and the fund set apart for a defined purpose.

2. GARNISHEE, *Rights of.* A garnishment proceeding is no more than a substitution of the plaintiff for the defendant debtor in the enforce-ment of any liability against the garnishee, and therefore the plaintiff can acquire no greater rights against the garnishee than the debtor himself possessed or could enforce.

3. EVIDENCE *Sustains Findings.* The testimony examined, and *held* to be sufficient to sustain the findings and judgment of the trial court.

*Error from Sedgwick Court of Common Pleas.*

ACTION by the *Lumber & Manufacturing Company* against D. W. Aaron on a promissory note, in which there was a judg-ment for plaintiff, and the *Trust & Investment Company* and James H. Lynch were summoned as garnishees. There were judgments against the garnishees for part only of the amounts

claimed by plaintiff to be due defendant, and plaintiff brings error.

*Sankey & Campbell,* for plaintiff in error.
*W. E. Stanley,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J.: This controversy arises upon the garnishment of a fund derived from a loan upon real estate, and which was set apart for the specific purpose of constructing a building on such real estate. D. W. Aaron, who was the owner of a lot in the city of Wichita, applied to the Equitable Trust & Investment Company for a loan of $8,000, in which application he represented that he was the owner of the property, and that there were no liens or claims against it. The application was accepted, and an agreement was made by which Aaron was to construct a three-story stone and brick building upon the lot, according to certain plans and specifications provided by J. H. Lynch, an architect. It was further provided that the building was to be constructed under the direction of Lynch and to his satisfaction, the company agreeing to loan $8,000 on a first mortgage, and the amount of the loan was to be paid out as the work progressed; that is, 50 per cent. of the value of the materials furnished and work done was to be paid out in that way, and the remaining 50 per cent. upon the completion and acceptance of the entire work, after the expiration of 15 days. It was further agreed by the parties, that the 50 per cent. reserved should be held by the investment company as security for the faithful completion of the work, to be applied under the direction of the superintendent in liquidation of any damages which the former might sustain. Afterward, Aaron and wife executed and delivered a promissory note for $8,000 and a mortgage upon the property to secure the same. Before any money was paid out upon the loan, Aaron and his wife executed an assignment in writing of the money derived from the loan, as follows:

"JUNE 12, 1889. — Pay to J. H. Lynch or order the full

amount due us on the loan negotiated by us, and this shall be
your receipt therefor.                      D. W. AARON,
                                   MANDA C. AARON.
   "*To the Equitable Trust & Investment Company, Wichita, Kas.*"

This order of assignment was accepted by the investment
company on the day of its date.    The construction of the
building was commenced about June 15, 1889, and was not
completed until some time in December, 1889.    Aaron was
indebted to the Rock Island Lumber & Manufacturing Com-
pany in the sum of $2,000 upon a promissory note, and on
September 25, 1889, an action was brought by that company
against him to recover the amount of the debt.    Upon the
same day an affidavit for garnishment was filed, by which the
plaintiff sought to charge the investment company and J. H.
Lynch as garnishees, and subject a portion of the building
fund to the payment of its debt.    Each of the garnishees
answered, denying the allegations of the affidavits, and that
there was any indebtedness to Aaron.    Issue was taken upon
their answers, and upon a trial had in January, 1890, judg-
ment was rendered in favor of the garnishees and they were
discharged.    On November 23, 1889, the plaintiff recovered
a judgment against Aaron without controversy in the sum
of $2,045.    After the plaintiff was defeated in the first pro-
ceeding in garnishment, other affidavits were filed against the
investment company and J. H. Lynch, seeking to charge
them as garnishees for money and property of Aaron's al-
leged to be in their possession.    In due time both parties
answered, denying the affidavits for garnishment of the
plaintiff, and upon these answers issue was taken and another
trial had, in which the court found in favor of the plaintiff
and against the Equitable Trust & Investment Company for
the sum of $105, and its costs since the 4th day of January,
1890, and also for an attorney's fee of $25.    Judgment was
also given against Lynch for $500, and costs since January
4, 1890, and also for an attorney's fee of $25.    The plain-
tiff was not satisfied with the recovery and brings the case
here, alleging numerous errors.

The main controversy, however, arises upon the testimony, in which there is much conflict. It is contended that when the first garnishment notice was served there was a large amount of unexpended money in the hands of the garnishees which should have been subjected to the payment of the plaintiff's judgment. According to the testimony of the prevailing parties, the money was loaned and set aside for a specific purpose. It was a trust fund devoted to the erection of a building upon the mortgaged property, under an agreement between all the parties concerned. The trust company cautiously provided that the money could only be used for that purpose, and that it should only be paid out as the work progressed, and further, that a portion of the same should be reserved until the building was completed, as a guaranty against any mistakes or losses. To make it more secure, Aaron and wife by assignment transferred the fund to Lynch, the superintendent of construction. The garnishment could not affect or annul the contract made when the loan was obtained, nor divert the fund from the well-defined purpose to which it was to be devoted. It is well settled that the plaintiff could not acquire any greater rights against the garnishees than the defendant himself possessed or could enforce. The agreements between the garnishees and Aaron being valid, he could not have reclaimed the money, or any portion of the same, until the agreements or trust were carried out, and the plaintiff had no greater rights or other recourse against the garnishees than might have been asserted by Aaron. Any residue remaining after the execution of the trust would belong to Aaron, and might be subjected to the payment of his debt; but until the trust was carried out and the building completed, it could not be determined that any portion of the fund would be unexpended. Until that time the fund was not subject to garnishment, nor could the investment company or Lynch be charged as garnishees. (Drake, Att., §§ 454b, 517; Waples, Att. 199; Wade, Att., §§ 449, 473; 8 Am. & Eng. Encyc. of Law, 1179, 1194.)

2. Garnishee, rights of.

1. Garnishment— property subject to specific fund.

The first garnishment proceeding was begun several months before the completion of the building, and at that time no part of the fund was subject to garnishment. Aaron could not have reclaimed any portion of it, and the general theory is that garnishment proceedings amount to no more than a substitution of the plaintiff for the defendant debtor in the enforcement of any liability against the garnishee. The second proceeding was not begun until January 4, 1890, at which time, as the trial court has found the building was completed, Aaron was then entitled to the unexpended balance of the fund, and from that time the garnishees became liable for such portion as was in their hands. The findings of the court as to what was actually paid out under the agreements of Aaron and the garnishees, and as to what remained, are based on conflicting testimony, and hence those matters are not open for our consideration.

Counsel for plaintiff make an extended argument upon the testimony, attempting to show that there was bad faith and sharp practice on the part of the garnishees as to the cancellation of a mortgage which plaintiff held before the building loan was perfected, as well as in the purchase and payment of the lumber sold by the plaintiff to be used in the construction of the building. But upon all these matters the evidence of the parties differed as widely as the claims which they have made. There was testimony tending to sustain the theory and claims of the garnishees, and on this state of the case the finding of the court is equally as conclusive upon us as would be the verdict of a jury. The various claims which were paid out of this fund appear to have been legitimate, and only proper allowances were made by the court. Considerable objection is made to the payment of taxes, insurance and interest on the loan out of this fund. These payments were made to protect the loan, and they appear to have been justified by the agreements of the parties. They were made before the last garnishment proceeding was begun. There are some objections to the rulings upon the admission of testimony, and to comments

3. Evidence sustains findings.

made by the court, but in neither do we find any substantial error. The judgment of the court of common pleas will be affirmed.

All the Justices concurring.